OPINION
{¶ 1} Appellant Paul Art Tarver appeals his conviction and sentence for complicity to commit aggravated murder and complicity to commit felonious assault, in the Stark County Court of Common Pleas. The relevant facts leading to this appeal are as follows.
 {¶ 2} In the early evening of March 7, 2002, appellant drove Keisha Lewis and her daughter to the Country Kitchen Restaurant on Lesh Rd. in Canton. Appellant and Lewis had previously been involved in a sexual relationship, and Lewis, who was now twelve weeks pregnant, had indicated that appellant was the father of her expected child. Appellant had requested previously that Lewis have an abortion, and at one point in January 2002, according to Lewis, had told her "[p]retty much if [she] had the baby that we're both not going to live to see it." Tr. at 286. Nonetheless, appellant's stated purpose for the trip to the restaurant was that appellant wanted to try to stay friends for the good of the baby.
 {¶ 3} After appellant drove into the lot of the restaurant at about 7 PM, he parked at the back instead of using his handicap sticker to take advantage of a closer spot. As Lewis began opening the passenger door to exit appellant's pickup truck, she was confronted by an armed male wearing a hood and gloves. The man placed his pistol against Lewis' abdominal area and forced her to move over in the seat. The man further demanded money and jewelry from appellant and Lewis. After obtaining Lewis' wallet and some cash from appellant, the man directed appellant to drive off.
 {¶ 4} Appellant drove the pickup to a chicken hatchery on Lesh Rd. The assailant thereupon fired three bullets into Lewis' abdomen. He also struck appellant with a bullet in the foot. The gunman then fled. Both appellant and Lewis managed to make some 911 calls from their cell phones, although they did not specify their exact location. Officer Nolte of the Canton Police Department was dispatched to the Country Kitchen Restaurant area to investigate a possible shooting involving a Ford Ranger pickup truck. After checking out the restaurant lot and finding nothing unusual, he proceeded down Lesh Rd. Fortunately for Lewis, Nolte chose to investigate the long driveway from Lesh into the back of the chicken hatchery.
 {¶ 5} After discovering appellant and Lewis, Nolte directed paramedics to the location and secured the scene. Nolte discovered one shell casing near the spot where appellant and Lewis had been on the ground, and found another shell casing at the front of the truck in a patch of grass.[1] At the emergency room, Nolte asked appellant what had happened. Appellant first related a short history of his relationship with Lewis and his past displeasure with the news of the pregnancy. Appellant advised Nolte that he had originally wanted Lewis to have an abortion, but now "he didn't want his baby to die." Tr. at 386. Appellant also gave a description of the assailant as a black male, wearing a mask and gloves.
 {¶ 6} Lewis successfully underwent surgery, but doctors deemed that two of the three bullets should be left inside her body. One of the wounds caused the possibility of a permanent limp from nerve damage. According to Dr. Albertson, the emergency room physician, the fetus was still viable when he first observed Lewis. Tr. at 409. However, the day after the surgery, Lewis experienced some bleeding, and it was thereupon verified by an ultrasound scan that the baby was no longer alive.
 {¶ 7} Subsequent police investigation began revealing a number of intriguing pieces of evidence related to the events of March 7, 2002. The foremost among these had to do with the shell casings found at the scene. Although neither the shooter nor the actual weapon was positively located, investigators were able to match the three shell casings from the scene with shells fired from a .380 Carpati pistol during another crime in Canton in early February 2002. In the latter incident, a Canton resident named Larry Lombardi fired a number of rounds into an empty van he mistakenly believed was owned by his girlfriend's former paramour. After the van shooting, Lombardi sold the Carpati gun to Omar Gomez in exchange for some drugs for his girlfriend. The gun thereafter changed hands again, when Gomez sold it to Frank Wilson a few days later. One of appellant's co-workers, Tyrone Howard, later purchased the gun for appellant from Wilson, after appellant told Howard he was looking to buy a firearm.
 {¶ 8} Police investigation also turned up telephone records showing several calls to and from a man in Pittsburgh, Curtis Barlow. Barlow agreed to talk with Canton police. An interview was set up at the Lorain, Ohio, police headquarters. During the interview, Barlow received two calls on his cell phone from appellant, telling Barlow not to talk to the officers. After the officers related that Barlow might be a suspect, he began crying and terminated the interview. The Canton officers felt they did not have cause to hold Barlow at that point.
 {¶ 9} Appellant was ultimately indicted on one count of complicity to aggravated murder and one count of complicity to felonious assault. On October 21, 2002, a jury trial commenced, lasting until October 24, 2002. The jury returned a verdict of guilty on both counts. A sentencing hearing was conducted on November 1, 2002.
 {¶ 10} The trial court sentenced appellant, for complicity to aggravated murder, to life imprisonment with eligibility for parole after twenty years. Said sentence was consecutive with a mandatory determinate term of three years on the gun specification. The trial court further sentenced appellant, for complicity to felonious assault, to a definite term of eight years in prison. This sentence was also consecutive with a mandatory determinate term of three years on the gun specification. The two firearm sentences were merged, and the sentence on count two was run consecutively with the mandatory term for the firearm specification and the underlying sentence on count one, for a total sentence of thirty-one years to life.
 {¶ 11} Appellant filed a notice of appeal on November 25, 2002, and herein raises the following nine Assignments of Error:
 {¶ 12} "I. The trial court erred in permitting the prosecutor to argue and present evidence regarding appellant's prior bad acts.
 {¶ 13} "II. The trial court erred in permitting the state to offer incriminating hearsay testimony in violation of rule 802 of the Ohio rules of evidence.
 {¶ 14} "III. The evidence at trial was insufficient to support a conviction, and the jury's verdict was against the manifest weight of the evidence.
 {¶ 15} "IV. The trial court plainly erred in imposing maximum prison terms for appellant's separate convictions.
 {¶ 16} "V. The trial court committed plain error when it entered a judgment of conviction and sentenced the defendant on allied offenses of similar import in violation of R.C. 2941.25 and also in violation of the state and federal prohibitions against the imposition of multiple punishments as set forth in the double jeopardy clause, in addition to failing to satisfy the statutory requirements for imposing consecutive sentences.
 {¶ 17} "VI. The state of ohio's conduct during trial constitutes prosecutorial misconduct.
 {¶ 18} "VII. Appellant was prejudicially deprived of his United States and Ohio Constitutional Rights to a fair trial due to the ineffective assistance of counsel.
 {¶ 19} "VIII. Other errors were committed at trial not raised herein but apparent on the record.
 {¶ 20} "IX. The cumulative effect of errors during the trial resulted in appellant being denied a fair trial."
 I. {¶ 21} In his First Assignment of Error, appellant contends the trial court erred by allowing the introduction of alleged prior "bad acts" evidence against him. We disagree.[2]
 {¶ 22} Evid.R. 404(A) provides that evidence of a person's character is not admissible to prove the person acted in conformity with that character. Evid.R. 404(B) sets forth an exception to the general rule against admitting evidence of a person's other bad acts. The Rule states as follows: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 23} Appellant specifically challenges the following "other acts" evidence from Lewis' testimony: (1) appellant's desire that Lewis have an abortion; (2) his concern about child support obligations; (3) his lying to his new girlfriend about his sexual involvement with Lewis; (4) his past threats to Lewis; (5) his altercation with his father over the new girlfriend; and (5) his use of a handicap sticker on the pickup truck.
 {¶ 24} We find most of the aforecited examples cited by appellant would have been directly relevant to whether he had a motive to arrange the forcible termination of Lewis' pregnancy. In regard to the handicap sticker, we find no merit in appellant's suggestion that this was used to infer a prior bad act of "handicap faking" (Appellant's Brief at 8); rather, it was permissible circumstantial evidence of appellant's plan on the very night of the shooting. Upon review, we find appellant has failed to demonstrate an abuse of discretion in regard to the evidentiary decisions of the trial court under Evid.R. 404(B).
 {¶ 25} Appellant's First Assignment of Error is overruled.
 II. {¶ 26} In his Second Assignment of Error, appellant challenges the introduction of alleged hearsay evidence against him.
 {¶ 27} The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, 180. Our task is to look at the totality of the circumstances in the particular case under appeal, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. State v. Oman (Feb. 14, 2000), Stark App. No. 1999CA00027. As a general rule, all relevant evidence is admissible. Evid.R. 402. However, under Evid.R. 802, hearsay evidence is not admissible, "except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio."
 {¶ 28} In support of his argument, appellant claims Lewis' testimony "included statements made by the Appellant's family members and friends." Appellant's Brief at 11. Appellant cites without elaboration to just two pages of transcript, Tr. 272 and Tr. 339, neither of which contain any hearsay statements. Appellant otherwise provides us with no specifics as to this alleged error. See App.R. 16(A)(7). Assuming, arguendo, appellant is referring to pages 272 through 339, our review does not reveal that any purported evidentiary errors in the allowance of Lewis' testimony would rise to the level of abuse of discretion.
 {¶ 29} Appellant's Second Assignment of Error is therefore overruled.
 III. {¶ 30} In his Third Assignment of Error, appellant argues that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. We disagree.
 {¶ 31} In considering an appeal concerning the sufficiency of the evidence, our standard is as follows: "* * * [T]he inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, 273. Ohio's complicity statute, R.C. 2923.03, reads in pertinent part as follows:
 {¶ 32} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
 {¶ 33} "(1) Solicit or procure another to commit the offense;
 {¶ 34} "(2) Aid or abet another in committing the offense;
 {¶ 35} "(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;
 {¶ 36} "(4) Cause an innocent or irresponsible person to commit the offense.
 "* * * {¶ 37} R.C. 2903.01(A) provides: "No person shall purposely, and with prior calculation and design, cause the death of another or the unlawful termination of another's pregnancy." Also, R.C. 2903.01(B) provides: "No person shall purposely cause the death of another or the unlawful termination of another's pregnancy while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit, kidnapping, rape, aggravated arson, arson, aggravated robbery, robbery, aggravated burglary, burglary, terrorism, or escape."
 {¶ 38} R.C. 2903.11(A) provides: "No person shall knowingly do either of the following: (1) Cause serious physical harm to another or to another's unborn; (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 39} Appellant suggests the state failed to prove the "purposely" element of complicity to commit aggravated murder and the "knowingly" element of complicity to commit felonious assault. However, among other things, the state called as witnesses all but one of the human components of the gun transaction "chain;" i.e., of the Lombardi-to-Gomez-to-Wilson-to-Howard crime weapon connection, only Wilson did not testify. However, Gomez covered the broken link in the chain by testifying he sold the .380 Carpati to Frank Wilson, and Tyrone Howard covered the other side of the broken link by testifying he bought the weapon from Wilson for appellant. The evidence of this series of transactions was further enhanced by Officer Dittmore's investigation. This nexus between appellant and the weapon and ammo used in the crime was presented along with significant circumstantial evidence that the "robbery" on Lesh Rd. was not a random, unconnected crime; e.g., appellant's uncharacteristically slow drive to the restaurant and his failure to make use of his handicap sticker at the parking lot, the shooter's obsession with pointing the gun at Lewis' body as opposed to appellant (the driver) during the forced trip from the restaurant to the hatchery, and appellant's unusual "suspect-like" initial reactions to Officer Nolte and Officer Dittmore as they first interviewed him as a crime victim.
 {¶ 40} Upon review of the record and transcript in a light most favorable to the prosecution, we find that a reasonable finder of fact could find the elements of the two offenses at issue proven beyond a reasonable doubt.
 {¶ 41} Appellant also argues that his conviction is against the manifest weight of the evidence. Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered ." State v.Martin (1983), 20 Ohio App.3d 172, 175. See also, State v. Thompkins
(1997), 78 Ohio St.3d 380. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 42} Appellant chiefly takes a "sufficiency" approach in the text of this assigned error; nonetheless, we have reviewed the record in the case of sub judice, including the testimony of the thirteen witnesses called by the state, and are unpersuaded by appellant's contention that the jury's verdict led to a manifest miscarriage of justice. As we have often emphasized, the triers of fact, as opposed to this Court, are in a far better position to weigh the credibility of witnesses. State v.DeHass (1967), 10 Ohio St.2d 230. We hold the jury's verdict was not against the manifest weight of the evidence.
 {¶ 43} Appellant's Third Assignment of Error is overruled.
 IV. {¶ 44} In his Fourth Assignment of Error, appellant contends the trial court erred in imposing maximum prison terms. We disagree.
 {¶ 45} R.C. 2929.14(C) sets forth the following conditions under which a trial court may impose a maximum sentence: "(C) * * * the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section." We read this statute in the disjunctive. See State v. Comersford (June 3, 1999), Delaware App. No. 98CA01004. Consequently, a maximum sentence may be imposed if the trial court finds any of the above-listed offender categories apply. Additionally, a trial court must state its reasons supporting a R.C.2929.14(C) maximum sentence finding. R.C. 2929.19(B)(2)(d), (e).
 {¶ 46} In the sentencing hearing in the case sub judice, the trial judge stated: "The Court cannot envision a more heinous form of either of these two crimes, and for that the Court shall impose the maximum consecutive sentences in this case." Tr., November 1, 2002, at 15. We find this wording synonymous with the "worst form of the offense" criterion of R.C. 2929.14(C). Moreover, the judge also used the specific "worst form of the offense" terminology shortly thereafter. Tr., November 1, 2002, at 16. The court further supported its finding with the following reasons:
 {¶ 47} "Now, relative to the sentencing. The testimony was that you arranged for a gunman to stage a robbery to act as a cover for the termination of your former girl friend's pregnancy, and you did this because you believed that your life would be ruined if your former girl friend gave birth to the baby.
 {¶ 48} "So in committing the ultimate selfish act, you arranged for really the unthinkable, and that is to unlawfully terminate the pregnancy, to have the baby killed in its mother's womb; and along with the unlawful termination of the pregnancy, you nearly also fatally injured a second victim and that was your former girl friend who as the Court understands from the testimony still carries two of the three bullets which were fired into her abdomen." Tr., November 1, 2002, at 14-15.
 {¶ 49} In order to modify or vacate his sentence on appeal, appellant bears the burden of demonstrating, by clear and convincing evidence, that the trial court erred in imposing the maximum sentence. See State v. Johnson, Washington App. No. 01CA5, 2002-CA-2576, citing Griffin Katz, Ohio Felony Sentencing Law (2001 Ed.) 725, § T 9.16. We additionally note that the trial court was bound by R.C. 2929.03
in imposing the life sentence on the complicity to commit aggravated murder charge. Based on the foregoing, we find appellant has failed to demonstrate a reversible maximum sentence error.
 {¶ 50} Appellant's Fourth Assignment of Error is overruled.
 V. {¶ 51} In his Fifth Assignment of Error, appellant contends that he was wrongfully sentenced for allied offenses of similar import, and that the trial court failed to meet the prerequisites for imposing consecutive sentences. We will address each issue in turn.
 "Allied Offense" Issue {¶ 52} As no motion to merge the counts was made before the trial court, appellant correctly recites that this issue must be analyzed under a "plain error" standard. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Johnson (Nov. 19, 1998), Richland App. No. 98-CA-42, citing State vs. Long (1978), 53 Ohio St.2d 91. Plain error does not exist unless but for the error, the outcome of the trial would clearly have been otherwise. State vs. Nicholas (1993),66 Ohio St.3d 431.
 {¶ 53} R.C. 2941.25 reads as follows:
 {¶ 54} "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 {¶ 55} "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
 {¶ 56} In considering whether offenses are allied offenses of similar import, the Ohio Supreme Court has held that rather than analyzing the offenses in light of the specific facts of the case, the elements of the offenses are to be compared in the abstract. State v.Rance (1999), 85 Ohio St.3d 632. In State v. Stewart, Stark App. No. 2001CA00033, 2002-Ohio-1833, for example, we were unable to find the elements of murder correspond to the elements of felonious assault to such a degree that the commission of murder requires the commission of felonious assault, or vice versa. We accordingly found the offenses were not allied offenses of similar import. Id.
 {¶ 57} However, we need not consider the applicability of Stewart
to the complicity counts in the case sub judice, as we are persuaded the offenses in question were each committed with a separate animus. R.C.2941.25(B). By way of analogy, courts have held that when a defendant intentionally fires a gun into a group of individuals, his intent to harm will be extended to each victim, not just the particular individual aimed at by the defendant. See, e.g., State v. Williams (1996),115 Ohio App.3d 24, 36, citing State v. Bailey (June 11, 1992), Cuyahoga App. No. 60735. Here, appellant conspired to unlawfully terminate Lewis' pregnancy; the intent to harm separately extends to appellant's complicity in the contemporaneous assault on Lewis' physical person.
 "Consecutive Sentences" Issue {¶ 58} R.C. 2929.14(E)(4) provides: "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 59} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 60} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 61} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 62} In imposing consecutive sentences, the trial court, at the sentencing hearing, is required to orally make its findings and state its reasons on the record. See State v. Comer, 99 Ohio St.3d 467,2003-Ohio-4165.
 {¶ 63} In the case sub judice, the trial court stated as follows in regard to the consecutive sentences:
 {¶ 64} "The sentences are ordered consecutive to one another because the Court finds that this is necessary to fulfill the purposes of Revised Code 2929.11 and it is not disproportionate to the seriousness of the Defendant's conduct or the danger that the Defendant poses, and the Court further finds that the harm caused was great or unusual, again the harm being the unlawful termination of the pregnancy and the serious injuries to Keisha Lewis." Tr., November 1, 2002, at 16-17.
 {¶ 65} We find the foregoing insufficient under the Ohio Supreme Court's mandate in Comer. Although the trial court's cross-reference to R.C. 2929.11 in the aforecited quotation is satisfactory pursuant toState v. Silva, Stark App. No. 2002CA00351, 2003-Ohio-4275, we hold the "harmed caused" reasoning in the aforecited quotation does not comply with R.C. 2929.14(E)(4)(b) as amended by 2002 H 327, effective July 8, 2002. Therefore, this portion of appellant's argument is well-taken, and a remand is warranted for resentencing under R.C. 2929.14(E)(4).
 {¶ 66} Appellant's Fifth Assignment of Error is overruled in part and sustained in part.
 VI. {¶ 67} In his Sixth Assignment of Error, appellant contends that prosecutorial misconduct resulted in reversible error. We disagree.
 {¶ 68} The test for prosecutorial misconduct is whether the prosecutor's comments and remarks were improper and if so, whether those comments and remarks prejudicially affected the substantial rights of the accused. State v. Lott (1990), 51 Ohio St.3d 160. In reviewing allegations of prosecutorial misconduct, it is our duty to consider the complained of conduct in the context of the entire trial. Darden v.Wainwright (1986), 477 U.S. 168.
 {¶ 69} Appellant specifically contends the prosecutor engaged in "story-telling" during opening statements. Appellant's Brief at 22. We note the following exchange from the transcript:
 {¶ 70} "On March the 7th, 2002, a young woman named Keisha Lewis was shot three times at close range in the abdomen. She underwent life-saving surgery and she survived, but the 12-and-a-half-week old fetus, or baby, she was carrying did not.
 {¶ 71} "And this was not simply a tragic event, ladies and gentlemen, but rather it was the culmination of an orchestrated plan put into place by this man, Paul Tarver. The father of that baby no less. A man who not only didn't want the child, but who selfishly needed to get rid —"
 {¶ 72} "Mr. Haupt: Objection
 {¶ 73} "The Court: If you could phrase your opening statements in terms of what you believe the evidence will prove.
 {¶ 74} "Ms. Hartnett: I will, Your Honor.
 {¶ 75} "The Court: Sustained. You may continue." Tr. at 253-254.
 {¶ 76} Opening statements are not evidence and are intended only to advise the jury what counsel expects the evidence to show. State v.Wilson, Hamilton App. No. C-000670, 2002-Ohio-1854, citing State v.Johnson (Sept. 25, 1996), Hamilton App. No. C-950493, unreported. Counsel should be accorded latitude by the trial court in making an opening statement. Columbus v. Hamilton (1992), 78 Ohio App.3d 653, 657, citingMaggio v. Cleveland (1949), 151 Ohio St. 136, paragraph two of the syllabus. A prosecutor's conduct during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial. State v.Apanovitch (1987), 33 Ohio St.3d 19, 24. Isolated comments by a prosecutor are not to be taken out of context and given their most damaging meaning. State v. Braden (2003), 98 Ohio St.3d 354, 370, citing Donnellyv. DeChristoforo (1974), 416 U.S. 637, 646-647.
 {¶ 77} Appellant cites no specific statements within the prosecutor's opening comments (see App.R. 16(A)(7)), but apparently invites us to review them in toto. Having done so, in the context of the entire transcript, we are unpersuaded by appellant's argument. We do not find the existence of prosecutorial misconduct under the facts and circumstances of the case sub judice.
 {¶ 78} Appellant's Sixth Assignment of Error is overruled.
 VII. {¶ 79} In his Seventh Assignment of Error, appellant argues he was deprived of the effective assistance of counsel at trial. We disagree.
 {¶ 80} Our standard of review is set forth in Strickland v.Washington (1984), 466 U.S. 668. Ohio adopted this standard in the case of State v. Bradley (1989), 42 Ohio St.3d 136. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different. Id. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. State v. Sallie (1998),81 Ohio St.3d 673, 675.
 {¶ 81} Appellant raises the following areas of alleged ineffective assistance: (1) failure to object to hearsay testimony; (2) failure to object to "bad acts" testimony; and (3) failure to object to testimony elicited during the sentencing hearing. We have previously addressed the hearsay and "bad acts" issues in the opinion. In regard to the sentencing hearing testimony, appellant provides no authority for the proposition that the statements of the victim and family members should have been challenged by appellant's trial counsel. Therefore, upon review of the record, we are unpersuaded that trial counsel failed to provide reasonable representation on the above points. It is well established that tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance. SeeState v. Carter (1995), 72 Ohio St.3d 545, 558, 1995-Ohio-104.
 {¶ 82} We find appellant was not deprived of the effective assistance of trial counsel. Appellant's Seventh Assignment of Error is therefore overruled.
 VIII. {¶ 83} In his Eighth Assignment of Error, appellant essentially raises an Anders argument as to other alleged errors at trial. However, we find this approach distinguishable from Anders v. California (1966),386 U.S. 738, in that appellant's counsel has herein filed a brief per App.R. 16(A) and assigned other errors for review. Therefore, we hold that appellant's Anders' claim under this assignment of error has no merit. SeeState v. Corley (April 26, 1999), Stark App. No. 1998CA00169. See, also, our analysis of appellant's Ninth Assignment of Error, infra.
 {¶ 84} Appellant's Eighth Assignment of Error is overruled.
 IX. {¶ 85} In his Ninth Assignment of Error, appellant contends that cumulative errors by the court resulted in the deprivation of a fair trial. We disagree.
 {¶ 86} The doctrine of cumulative error provides that a conviction will be reversed where the cumulative effect of evidentiary errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not singularly constitute cause for reversal. State v. DeMarco (1987),31 Ohio St.3d 191, paragraph two of the syllabus.
 {¶ 87} In support of his argument, appellant directs to the assigned errors raised earlier in this appeal. Notwithstanding this Court's past reluctance to embrace cumulative error as grounds for reversal (see State v. Mascarella (July 6, 1995), Tuscarawas App. No. 93AP100075), we have reviewed the relevant record in this matter and find reversible error has not been demonstrated.
 {¶ 88} Appellant's Ninth Assignment of Error is therefore overruled.
 {¶ 89} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
Wise, J., Edwards, J., concurs.
Hoffman, P.J., concurs in part and dissents in part.
[1] A third casing was later found by another officer on the truck's floorboard.
[2] We note at this juncture that the record in the case sub judice reveals little or no objection to the testimony and/or questions cited by appellant in the First and Second Assignments of Error. It is well-established that an appellate court will generally not consider any error which a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. Statev. 1981 Dodge Ram Van (1988), 36 Ohio St.3d 168, 170. However, we have chosen to address these arguments in the interest of judicial economy.