Zimmerman, J.
 

 In presenting this appeal, and in asking a reversal of the judgment rendered against it, the city contends that it did not have a fair and impartial trial, and was materially prejudiced in two important respects:
 

 1. By the failure of the trial court to sustain the city’s motion to withdraw a juror and declare a mistrial for manifest misconduct of one of plaintiff’s counsel in his opening statement to the jury.
 

 2. By the failure of the trial court to sustain the
 
 *139
 
 city’s motion for a new trial on the ground that two of the jurors were chargeable with misconduct in not answering truthfully questions asked them on their
 
 voir dire
 
 examination.
 

 We shall discuss these contentions in the order stated.
 

 The bill of exceptions shows the following comments by one of counsel for plaintiff in his opening statement, the objection and motion of counsel for the city and the rulings of thp court:
 

 “She [plaintiff] was born at Amberote Montero, Italy in 1897. She came to this country with her parents when she was five years old. She has had no formal schooling. Her only education she received from her mother. When she was sixteen, with her parents’ blessing she married. She married Rocco Maggio who was working in the shops of the Pennsylvania Railroad down in Wellsville, Ohio; in 1918 or possibly ’19 the family moved to Cleveland where her daughter, Mildred, was torn in 1922.
 

 “Her son, Michael, was born in 1928. Those are the only children she had. We are going to have medical evidence that will show that with these two full term pregnancies she also had, during the course of her married life, I think it is nine, yes, nine miscarriages, as well as two full term pregnancies.
 

 “She ran hei house, kept home for Rocco and her two children until 1936 when Rocco was hurt. He' was hit in the bead with an air hammer in the Pennsylvania shop aid some short time after that accident his injuries, beirg so terribly severe, he lost his mind and was institutionalized.
 

 “Mr. Green: 1 object to this, your Honor please.
 

 “The court: Sustained.
 

 “Mr. Green: It has nothing to do with this lawsuit.
 

 “Mr. Spangenberg: It will become medically sig
 
 *140
 
 nificant, your Honor, to show that because of the care of her husband she has been under a greater emotional strain and tenseness than most women would be and one reason the accident had such severe consequences was this overriding and constant emotional strain.
 

 £ £ The court: After all you are telling what you expect the evidence to show, so please adhere to that.
 

 “Mr. Spangenberg: Very well.
 

 “Mr.. Green: I was wondering, is my objection overruled? I want an exception.
 

 “The court: Very well.
 

 ‘‘
 
 Mr. Green: Would you step up here, please ?
 

 “ Thereupon a discussion was had Between court and counsel outside of the hearing of the jury at which time the following proceedings were held: .
 

 “Mr. Green: The defendant moves the court for its order withdrawing a juror and continuing this case on the ground of misconduct by plaintiff’s counsel; overruled and exception.”
 

 A part of the quoted comments of counsel were highly objectionable not only because they injected into the case plaintiff’s family of two children and a mentally sick husband, but because they included a graphic description of the incident allegedly responsible for the husband’s mental derangement, neither of which matters had any relevancy to plaintiff’s action to recover compensatory damages for physical injuries to herself.
 

 Essentially, in keeping with subdivisions 1 and 2 of Section 11420-1, General Code, the function of an opening statement is to inform the jury in a concise and orderly way of the nature of the case and the questions involved, and to outline the facts intended to be proved.
 

 Counsel should, of course, be accorded latitude by the trial court in making his opening statement, but
 
 *141
 
 when he deliberately attempts to influence and sway the jury by a recital of matters foreign to the case,, which matters he knows or ought to know cannot be shown by competent or admissible evidence, or when he makes a statement through accident, inadvertence or misconception which is improper and patently harmful to the opposing side, it may constitute the basis for the ordering of a mistrial or for the reversal by a reviewing court of a judgment favorable to the party represented by such counsel. See 39 Ohio Jurisprudence, 610, Section 38; 53 American Jurisprudence, 357, Section 454
 
 et seq.
 

 The sole question before the jury in the present action for compensatory damages was whether the plaintiff was injured by the negligence of the defendants and, if so, the extent of those injuries to her personally and how much money she should have therefor.
 

 Had counsel made even a cursory investigation before trial, he would have discovered that ever since the decision of this court in the case of
 
 City of Galion
 
 v.
 
 Lauer,
 
 55 Ohio St., 392, 45 N. E., 1044, the law of Ohio has been that, in an action to recover damages for personal injuries, evidence that the plaintiff was married and had a family dependent on him for care and support is incompetent for the reason that the tendency of such evidence is to enhance the damages beyond the sum legally recoverable.
 

 Had counsel investigated further he would have found that most of the cases dealing with the subject are authority for the rule that, in an action to recover damages for personal injuries, testimony concerning the dependent family or the unfortunate domestic-situation of the injured person is objectionable gnd inadmissible, the only purpose of such testimony being to arouse the sympathy of the jury and thus increase
 
 *142
 
 the amount of a damage award beyond justifiable limits. See 25 Corpus Juris Secundum, “Damages,” 801, Section 152, and the many cases cited in the notes; 15 American Jurisprudence, 781, Section 342;
 
 Crawford
 
 v.
 
 Hite, Admr.,
 
 176 Va., 69, 10 S. E. (2d), 561.
 

 Specifically, in a wife’s action to recover for personal injuries, the admission of evidence that plaintiff’s husband was an invalid unable to work and was supported by plaintiff constitutes reversible error.
 
 Miranda
 
 v.
 
 Halama-Enderstein Co.,
 
 37 N. M., 87, 18 P. (2d), 1019.
 

 We now come to the second complaint registered by the city.
 

 Upon the
 
 voir dire
 
 examination of the prospective jurors, numerous questions in varied forms were put to them by the court and counsel, relative to accidents sustained by them or by members of their immediate families and as to claims made or actions brought with respect thereto. The answers of the two jurors here involved clearly indicated that there were no accidents, claims or actions within their experience of the kind about which inquiry was made. These jurors were further asked whether they knew any reason or reasons which would prevent them from acting as fair and impartial jurors in the case, and their answers were in the negative.
 

 After the trial, in a deposition given by one of the women jurors who had sat in the case, which deposition was offered in support of the city’s motion for a new trial, it was developed that several months before the trial, while the juror and her husband were riding in a city bus, an altercation occurred between the husband and the bus driver. In the fight which ensued the husband was knocked down by the driver, bled considerably, suffered head injuries of sufficient gravity to leave a scar and was removed to a hospital for treatment. It was shown in an affidavit that the
 
 *143
 
 husband had made a claim for the injury received. The juror deposed that during the
 
 voir dire
 
 examination the incident described never entered her mind, and that she considered herself a fair and impartial juror.
 

 In a deposition given by one of the men jurors, following the trial, and which the city also presented in support of its motion for a new trial, it was brought out that several years previously the juror’s minor son had been struck by an automobile and thereby suffered a brain concussion, bodily bruises and a nervous shock. An action was commenced on account of such injuries in the Court of Common Pleas with the father-juror appearing as next friend. The sum of $10,000 was asked as damages and a judgment in the sum of $5,000 was recovered but never collected. This juror likewise insisted in his deposition that he did not recall such incident during the
 
 voir dire
 
 examination, and' that he also considered himself a fair and impartial juror.
 

 As a countermeasure, depositions were taken and offered on behalf of plaintiff, by which it was sought to show that, through records prepared and kept by the accident department of the Cleveland Transit System and by the Cleveland Index Bureau, information was available to counsel for defendant, which would have enabled him before trial to discover the incidents described in the jurors’ depositions.
 

 In answer to these latter depositions, counsel, who conducted the trial of the present action for the defendant city, filed an affidavit in which he stated “that neither before or during trial did he know, nor did anyone, to his knowledge, know that the said jurors [naming the jurors involved] had ever had any accident experience, or their relatives by blood or marriage had any accident experience * *
 

 When one considers that the jurors under discussion
 
 *144
 
 were summoned in a case involving a damage claim for personal injuries and were then asked upon
 
 voir dire
 
 questions, especially designed to prod their memories, with regard to mishaps occurring to them or to their close relatives, it seems little short of amazing that they should have completely forgotten the rather unusual events which they afterward related in their depositions.
 

 In passing, we would suggest to trial courts that, as a matter of sound policy, prospective jurors should be placed under oath before their
 
 voir dire
 
 examination. This might help to make less prevalent the practice employed, in some localities, of investigating jurors, after the rendition of an unfavorable verdict, in an attempt to discover grounds for inducing a court to order a new trial, which practice is not to be commended or encouraged. See
 
 Steiner
 
 v.
 
 Custer, 137
 
 Onio St., 448, 31 N. E. (2d), 855.
 

 Although we still hold to the view that the granting of new trials for the alleged misconduct of jurors should be left largely to the sound discretion of the trial court
 
 (Pearson
 
 v.
 
 Gardner Cartage Co., Inc.,
 
 148 Ohio St., 425, 76 N. E. [2d], 67), instances may and do arise in which a reviewing court should act. As was remarked by Judge Turner, near the close of the opinion in
 
 Pearson
 
 v.
 
 Gardner Cartage Co., supra,
 
 “we recognize the right of a litigant to be informed fully in all pertinent matters pertaining to prospective jurors to the end that challenges may be intelligently exercised on the ground of suspicion of prejudice or peremptorily, but we recognize also that the real question for a reviewing court is whether substantial justice has been done.”
 

 From an impartial and dispassionate reading of the bill of exceptions, the distinct impression is gained that the jury was, to say the least, extremely generous in giving plaintiff the full amount of damages she
 
 *145
 
 asked against the city. Plaintiff had previously made a claim similar in' some respects to the instant one. In 1926 she instituted an action for damages for personal injuries against the Cleveland Railway Company. It was set out in the petition that plaintiff was riding as a passenger in a streetcar owned and operated by the defendánt, and that due to the negligence of the defendant the streetcar collided with another vehicle “with such great force that in consequence this plaintiff was violently thrown against the framework of the said streetcar and injured as hereinafter set forth.” She asked damages in the sum of $20,000 in that case.
 

 Moreover, in the present case, the evidence plainly showed that several of the ailments and physical disabilities with which plaintiff was afflicted and which she and some of her witnesses attributed to the collision of July 24, 1942, were chronic and had existed for a long time prior to that date.
 

 Without lengthening the opinion further, this court is unanimously of the view that because of the objectionable and improper matter included in the opening statement, which could well have been a factor contributing to the large amount of the damage award-, coupled with the trial of the case to jurors, whose qualifications as fair and impartial jurors were open to serious question, the city’s motion for a new trial should have been sustained. The failure to do so resulted in a denial to it of substantial justice.
 

 Therefore, the judgment of the Court of Appeals is reversed and the cause remanded to the trial court for further proceedings according to law.
 

 Judgment
 
 reversed.
 

 Weygandt, C. J., Matthias, Hart, Stewart, Turner and Taet, JJ., concur.