OPINION
{¶ 1} The plaintiff-appellant, State of Ohio ("State"), appeals the May 17, 2005 Judgment of the Auglaize County Municipal Court granting a mistrial based on remarks made by the assistant prosecutor during opening statements.
 {¶ 2} On June 21, 2003, Robert J. Phipps ("Phipps") was driving on County Road 33A in Auglaize County, Ohio. Phipps was stopped and exhibited signs of intoxication. He refused to submit to a blood, breath or urine alcohol test; however, field sobriety tests were conducted resulting in his arrest. He was subsequently charged with violating R.C. 4511.19(A)(1), 4511.21(C), and4513.263(B)(1); respectively, operating a motor vehicle under the influence, speed, and failure to use a seat belt.
 {¶ 3} On October 20, 2003, the State and Phipps stipulated that in administering the field sobriety tests, the State Trooper "substantially complied" with the National Highway Traffic Safety Administration (NHTSA) regulations, but did not strictly comply. On October 27, 2003, the trial court filed a Journal Entry stating that the parties had agreed to file briefs on the issue of whether the new legislative standard of requiring only substantial compliance with the NHTSA regulations pursuant to recently amended R.C. 4511.19(D)(4)(b) was constitutional. Briefs were filed by Phipps on November 10, 2003 and by the State on November 18, 2003. The trial court subsequently found that R.C.4511.19(D)(4)(b) was unconstitutional. However, rather than dismissing the case, the trial court instead ruled that the State had the right to request an interlocutory appeal if it certified that the field test evidence was crucial to the prosecution in this case.
 {¶ 4} On December 2, 2003, the State filed a request for leave to appeal with the trial court and filed the notice of appeal to this Court. On the same day, the trial court ordered the case stayed until completion of the appeal. In an apparent effort to strengthen the finality of its prior orders, the trial court later filed a Nunc Pro Tunc Entry on December 8, 2003, stating that the trial court was "suppressing" the State's use of the field sobriety tests.
 {¶ 5} On January 13, 2004, this Court granted a leave to appeal. In the appeal, the State and Phipps also stipulated that the State Trooper in this case "substantially complied" with the NHTSA standards, but did not strictly comply. On August 23, 2004, this Court rendered its decision finding R.C. 4511.19(D)(4)(b) to be constitutional; the judgment of the trial court purporting to suppress the evidence was reversed and the case was remanded for trial.[1] See State v. Phipps, 3rd Dist. No. 2-03-39,2004-Ohio-4400.
 {¶ 6} On September 8, 2004, the State filed a motion in limine requesting the trial court to prohibit Phipps from introducing information regarding whether or not the State Trooper acted in substantial versus strict compliance to the field sobriety tests. On September 10, 2004, Phipps filed a response to the motion in limine requesting that the trial court deny the State's motion.
 {¶ 7} On March 7, 2005, the trial court granted the motion in limine ordering the following:
The defense is barred from questioning the officer as whetheror not there was strict compliance with the standards unless thedefense will present evidence as to the effect that the failureto strictly comply means. Additionally the State is barred frompresenting evidence as to the meaning of the test results. Thetest results are admissible simply as observations of thephysical condition of the defendant. The issue as to thestandards and degree of compliance or noncompliance with thestandards is of no relevance without testimony by an expert.
 {¶ 8} On May 16, 2005, a jury trial was commenced. During the Assistant Prosecutor's opening statement, the State indicated that the State Trooper who would testify had specialized training in sobriety tests and stated that the trooper would identify
how and what they test and how their prime determination is todetermine your ability to be able to have divided attention.Divided attention is a necessary aspect of driving a motorvehicle. You have to be able to watch not only the road, but gagethe operation of your vehicle * * *. You have things to do withyour feet, things to do with your hands, things to do with youreyes, all while driving a vehicle that could, you know, become adeadly weapon. Trans. p. 2-3. Defense counsel objected as to the statement of the purpose of the field sobriety tests, as to any mention of the "divided attention" standard, and as to the correlation between field sobriety tests and consumption of alcohol. After defense counsel's objection, the jury was excused and the trial court admonished the prosecutor stating "the interlocutory ruling said very clearly, test results admissible simply as to the observations of the physical condition of the defendant." Trans. p. 3. The trial court then ruled: "I am not going to grant a mistrial, but I am going to instruct the Jury * * * that they need to disregard that portion of the argument." Trans. p. 4-5. After being questioned again by the prosecutor about what testimony was to be addressed in the court's instruction, the trial court stated:
I think we have to prohibit going into * * * even the purposeof the test, that we are simply * * * — that we had these thingsdone and * * * this is what we observed. So * * * we performedthe test and what we observed, so uh — we[`]re not even goinginto the training of the officer as to what they mean.
Trans. p. 5. Furthermore, the trial court stated:
We[`]re going back into when Mr. Poppe and I first started thepractice of law, that you simply — the officer testifies as tofield sobriety tests, this is what I did, this is what wasobserved, there were no numbers, there were no discussions ofdivided things, it's just we did this test to see how they coulddo. I think that's where we go, uh — Trans. p. 5. After some further discussion, the State requested a brief recess. Following the brief recess, the State requested the "opportunity to do some additional research of a feasibility of an interlocutory appeal," claiming that
[w]ith the added language to the May 7th, 2005 ruling, webelieve that that decision has rendered ou[r] case so ineffectivethat successful prosecution is unlikely, so we need the abilityto either seek interlocutory appeal, I'd like to consult with ourelected official some more over the lunch hour before we perfectthat appeal.
Trans. p. 7-8. After the break for lunch, the trial judge re-opened court and without further argument by counsel, the court stated:
Well viewing the entire things and having the hour and a halfto reflect upon it, while the Court initially felt that it couldprobably clear any problem with regard to this case with a uh — acurative instruction to the Jury, uh — I'm not sure that I reallycan and the Court's previous practice has been when there's beena motion in limine uh — although this was in a civil case, wasthat when it was violation of a motion in limine, that the Courtwould simply grant the mistrial, request that if it was importantenough to do as a motion in limine uh — and to put a ruling on inlimine, that then reach that point, that may have the sameeffect, I will add on that I will look at the language on theruling from March uh — and any additions that they I feel arenecessary in the clarification of the rulings today I will add.But I will grant the mistrial request * * *
Trans. p. 8-9. The trial court then granted a mistrial and dismissed the jury. Trans. p. 10.
 {¶ 9} Subsequently, on May 17, 2005, the trial court filed a Journal Entry stating that since the State did not comply with the prior ruling on the motion in limine a mistrial was in order. However, in the May 17, 2005 Journal Entry, it appears that the trial court again endeavored to enhance the finality of its prior ruling by purporting to characterize its mistrial order in terms of "limiting" the State's evidence. In any event, on May 19, 2005, the State filed a notice of appeal and filed a motion for leave to appeal.
 {¶ 10} On review of the State's motion for leave and the trial court's May 17, 2005 judgment entry, the administrative panel of this court, in effect, accepted the trial court's characterization and construed the "limiting" language of the trial court's judgment as a suppression of evidence and therefore granted the appeal as an appeal of right. Accordingly, the State now appeals, asserting a sole assignment of error:
THE TRIAL COURT'S RULING AT A DUI TRIAL LIMITING THEPROSECUTION TO ELICITING TESTIMONY FROM THE ARRESTING TO HIS"PERSONAL OBSERVATIONS ONLY" WITHOUT REGARD TO THECONCLUSIONS FROM THE SAME AS IT RELATES TO FIELD SOBRIETY TEST ISIN DIRECT CONTRADICTION TO OHIO REVISED CODE §4511.19(D)(4)(b)(i)(ii).
 {¶ 11} Before discussing the assignment of error we believe we must review more closely whether this appeal is properly before this Court as of right. The right to appeal a trial court's decision by the State is governed by R.C. 2945.67(A), which provides:
(A) A prosecuting attorney, village solicitor, city directorof law, or the attorney general may appeal as a matter of rightany decision of a trial court in a criminal case * * * whichdecision grants a motion to dismiss all or any part of anindictment, complaint, or information, a motion to suppressevidence, or a motion for the return of seized property or grantspost conviction relief * * * and may appeal by leave of the courtto which the appeal is taken any other decision, except the finalverdict, of the trial court in a criminal case * * *.
This statute grants the State a substantive, but limited, right of appeal. State v. Slatter (1981), 66 Ohio St.2d 452, 456-57,423 N.E.2d 100. The State's absolute right of appeal is only available where the trial court's decision falls within one of four categories stated in the statute: (1) a motion to dismiss all or part of an indictment, complaint, or information; (2) a motion to suppress evidence; (3) a motion for the return of seized property; or (4) a petition for post-conviction relief.State v. Matthews (1998), 81 Ohio St.3d 375, 377-78,691 N.E.2d 1041.
 {¶ 12} The State may appeal "any other decision" of the trial court, but only if the State first obtains leave from the appellate court to take the appeal. R.C. 2945.67(A); Matthews,80 Ohio St.3d at 378 (stating it is solely within the discretion of the reviewing court to grant or deny the State's motion for leave to appeal in a criminal case); State v. Keeton (1985),18 Ohio St.3d 379, 481 N.E.2d 629 (holding the State may appeal any decision of a trial court by leave of the appellate court in a criminal case which is adverse to the State, except a final verdict). The decision to grant or deny leave for the State to appeal then rests solely within the discretion of the court of appeals. State v. Fisher (1988), 35 Ohio St.3d 22, 23,517 N.E.2d 911.
 {¶ 13} As noted earlier, in this case, the judgment appealed from granted a mistrial based on remarks made by the assistant prosecutor during opening statements. In those remarks, the assistant prosecutor was outlining certain testimony the State expected to elicit during its case in chief regarding certain premises about driving and alcohol consumption. On objection from defense counsel, the trial court determined the reference to the intended testimony to be in violation of its prior in liminal ruling purporting to limit such evidence at trial. Ultimately, the trial court determined this infraction to be serious enough to warrant a mistrial which the court ordered. However, in the May 17, 2005 judgment appealed from, the trial court characterized its ruling on terms of "limiting evidence" rather than as a mistrial for violation of an in limine ruling.
 {¶ 14} In reviewing the trial court's judgment entry appealed from, this court accepted the trial court's characterization at face value and accordingly, filed a Journal Entry on June 2, 2005 in which we stated:
The State of Ohio may prosecute an appeal as a matter of rightfrom a judgment suppressing or excluding evidence by filing aproperly certified notice of appeal * * *. Furthermore, whenevidence is suppressed after the commencement of trial, the trialcourt shall not proceed so as to defeat the State's right ofappeal. Therefore, if the State has an appeal as a matter ofright, a motion for leave pursuant to App.R. 5 (C) isunnecessary.
 {¶ 15} However, upon closer review of the entire record in this case, we find that any prior characterization of the trial court's action in this instance as a suppression or exclusion of evidence, (whether by the trial court or this court), was not accurate and that the State's appeal as of right was improvidently allowed. Specifically, it is our determination that the May 17, 2005 Journal Entry simply reiterated the trial court's intention to implement its prior in limine ruling issued on March 7, 2005. As stated in the May 17, 2005 Journal Entry,
The Court * * * ruled that the State was barred frompresenting evidence as to the meaning of the test results. TheCourt should have added to the entry that the [S]tate was limitedto the admission of the tests results when not given in strictcompliance with the standards unless the [S]tate can show thatthe deviation is a de-minimus deviation or presents experttestimony as to the effect or lack of effect of the deviation.The Court held that otherwise the [S]tate was limited topresenting evidence simply as to observations of the officer asto the physical or mental condition of the defendant asdemonstrated by the tests.
 {¶ 16} A motion in limine is a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of an evidentiary issue. State v. Grubb
(1986), 28 Ohio St.3d 199, 200-201, 503 N.E.2d 142. The established rule in Ohio is that the grant or denial of a motion in limine is not a ruling on the evidence. Id. The ruling is preliminary and thereby requires the parties to raise specific evidentiary objections at trial in order to permit the trial court to consider the admissibility of the evidence in its actual context. Id. "At trial it is incumbent upon a defendant, who has been temporarily restricted from introducing evidence by virtue of a motion in limine, to seek the introduction of the evidence by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal." Id. at 203. Failure to proffer the evidence waives the right to appeal the granting of the motion. Id.
 {¶ 17} Moreover, "the function of opening statement is to inform the jury in a concise and orderly way of the nature of the case and questions involved, and to outline the facts intended to be proved." Maggio v. City of Cleveland (1949),151 Ohio St. 136, 140, 84 N.E.2d 912. The opening statements of counsel are not deemed to be evidence. State v. Frazier (1995),73 Ohio St.3d 323, 338, 652 N.E.2d 1000. Furthermore, attorneys are afforded latitude in the presentation of opening arguments.Maggio, 151 Ohio St. at 141.
 {¶ 18} In this case, the trial court simply ruled that it would require the State to either (1) explain the effect of any deviation from strict compliance in the tests via expert testimony so that it could be objectively determined exactly what "substantial compliance" means in this case, or (2) limit itself to simply presenting testimony as to the observations and performance of the test without testimony as to the scientific results and conclusions. We find the trial court's posture to be inherently reasonable in instances where substantial compliance under R.C. 4511.19(D)(4)(b) is alleged.[2] Moreover, the purely tentative nature of the trial court's March 7, 2005 and May 17, 2005 rulings is demonstrated in the fact that despite two appeals, the record in this case still does not indicate exactly how the field sobriety tests were conducted or why the tests are deemed to be in substantial compliance as opposed to strict compliance with NHTSA regulations.
 {¶ 19} In sum, no actual evidence has yet been offered in this case and none has been excluded. On the contrary, everything at issue in this appeal arose during opening statements and, in fact, rather than suppressing evidence, the trial court openly telegraphed its likely permission regarding at least one avenue, via expert testimony, for the State to present the specific evidence it apparently wished to present. Nevertheless, it appears that at the time of the trial court's initial ruling on the defense objection, the State chose not to proceed further with opening statements and/or the trial, electing instead to explore an interlocutory appeal from the trial court's ruling.
 {¶ 20} Since this case is not one which the State may appeal as a matter of right under R.C. 2945.67(A), an appeal may only be brought by leave of the court to which the appeal is taken. SeeKeeton, 18 Ohio St.3d 379. The decision to grant leave is within the discretion of this Court. Fisher,35 Ohio St.3d at 23. Upon the circumstances of this case, we find there is no good cause for an interlocutory motion for leave to appeal by the State. However, in this instance we believe that leave to appeal must be granted in order to address the implications of the trial court's ruling and the State's actions upon the further prosecution of the defendant.
 {¶ 21} With regard to the decision of the trial court to terminate the trial, we frankly find no indication in the record that the "divided attention" testimony referred to by the prosecutor in her opening statement which led to the defense objection, has anything to do with the NHTSA regulations or the degree of compliance therewith. Under these circumstances, it is difficult to see how the remarks of the prosecutor during opening statements, at least up to the point of the objection, actually violated the prior in limine rulings of the court and/or rose to the level of a mistrial.
 {¶ 22} On the other hand, the actions of the State in purporting to interrupt a jury trial to pursue an interlocutory appeal based on the trial court merely sustaining a defense objection during opening statements is equally troublesome. As a result, the only principle we believe is appropriate to apply in these circumstances is that, whether it is determined to be the trial court or the State that may have improperly caused this jury trial to be prematurely terminated, it does not seem that we can legitimately place the legal consequences for it upon the defendant.
 {¶ 23} In a jury trial, jeopardy attaches when the jury is empanelled and sworn in. United States v. Martin Linen SupplyCo. (1977), 430 U.S. 564, 569, 97 S.Ct. 1349. In a bench trial, jeopardy attaches when the court first hears evidence. Id. In this case, the jury was empanelled and sworn in, and the State began making its opening statement; thus, jeopardy had clearly attached.
 {¶ 24} In sum, we find that there is no interlocutory right of appeal, and no legitimate basis for an interlocutory leave to appeal by the State from an in liminal ruling of the trial court merely sustaining a defense objection to remarks by the State during opening statement as to evidence or testimony the State intends to introduce at trial. Moreover, once jeopardy has attached in a jury trial, the State naturally assumes the risk of necessitating a mistrial and being barred from further prosecution, where the State prematurely terminates its opening statement to pursue and file such an appeal, as the State did here. See Oregon v. Kennedy (1982), 456 U.S. 667, 675-676,102 S.Ct. 2083, 72 L.Ed.2d 416.
 {¶ 25} For these reasons, the assignment of error is overruled and the judgment of the trial court granting the mistrial is affirmed, albeit for different reasons than those stated by the trial court. Jeopardy having once attached to the proceedings in this case and the mistrial having been necessitated by the action of the State as set forth above, further prosecution of the defendant on this matter is barred on principles of Double Jeopardy. Accordingly, the case is remanded to the trial court with instructions to dismiss the case and the defendant is discharged.
Judgment affirmed and cause remanded for dismissal.
 Bryant, P.J., concurs.
 Rogers, J., concurs separately.
[1] On September 16, 2004, the State filed a memorandum in support of jurisdiction for Phipps in order to seek Supreme Court review of the Appellate Court's ruling regarding the constitutionality of R.C. 4511.19(D)(4)(b). On December 15, 2004, the Ohio Supreme Court declined jurisdiction to hear the case and dismissed the appeal as not involving any substantial constitutional question.
[2] We have previously stated our concerns about relying upon the individual interpretations of "observations" versus "results" court by court throughout the state in lieu of a more uniform and definitive standard in State v. Schmitt, 3rd Dist. No. 10-01-16, 2002-Ohio-4615. However, the Ohio Supreme Court chose not to address those concerns in State v. Schmitt,101 Ohio St.3d 79, 2004-Ohio-37.