**The STATE of Ohio, Appellee,**

v.

**SKAGGS, Appellant.**

[Cite as *State v. Skaggs*, 185 Ohio App.3d 752, 2010-Ohio-302.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 08CA0074.

Decided Jan. 29, 2010.

Stephen Schumaker, Clark County Prosecuting Attorney, and Amy M. Smith, Assistant Prosecuting Attorney, for appellee.

Paul M. Courtney, for appellant.

GRADY, Judge.

{¶ 1} Defendant, Jason Skaggs, appeals from his conviction and sentence for aggravated vehicular homicide and aggravated vehicular assault.

{¶ 2} On March 8, 2007, at around 5:30 p.m., defendant drove his Chevy Tahoe northbound on Urbana Road, Route 72, at 96 miles per hour as he approached the intersection of Moorefield Road and Urbana Road in Clark County. Defendant's Tahoe struck several vehicles that were stopped at the intersection waiting for the red light, setting off a chain-reaction collision. As a result of the crash, three people died, and two others were seriously injured.

{¶ 3} Defendant was indicted on three counts of aggravated vehicular homicide, R.C. 2903.06(A)(2)(a), and two counts of aggravated vehicular assault, R.C. 2903.08(A)(2)(b). After nearly three weeks of trial, a jury convicted defendant of all charges. The trial court sentenced defendant to consecutive prison terms totaling 34 years.

{¶ 4} Defendant timely appealed to this court from his conviction and sentence.

### FIRST ASSIGNMENT OF ERROR

 {¶ 5} "The judgment of the trial court is against the weight and sufficiency of the evidence at trial."

{¶ 6} R.C. 2901.21(A) provides that a person is not criminally liable unless "(1) [t]he person's liability is based on conduct that includes either a voluntary act, or an omission to perform an act or duty that the person is capable of performing" and "(2) [t]he person has the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense." R.C. 2901.15(A) provides, "Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution."

{¶ 7} In order to prove violations of R.C. 2903.06(A)(2)(a) and 2903.08(A)(2)(b), the state was required to prove, beyond a reasonable doubt that while operating his motor vehicle, defendant recklessly caused death or serious physical harm to others. "Recklessly" is a culpable mental state defined by R.C. 2901.22(C), which states:

{¶ 8} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

{¶ 9} Defendant argues that his convictions are not supported by legally sufficient evidence and are against the manifest weight of the evidence because the evidence presented at trial establishes that defendant had an epileptic seizure in the moments prior to the crash, and, therefore, the evidence does not support a finding that defendant acted recklessly in causing death or serious physical harm to others.

{¶ 10} A sufficiency-of-the-evidence argument challenges whether the state has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the guilty verdict as a matter of law. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492:

{¶ 11} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶ 12} Defendant offered evidence at trial to support his argument that he lacked the culpable mental state of recklessness because his conduct was instead the result of an epileptic seizure. Such evidence would also show that his conduct was not the result of a voluntary act, a requirement for criminal liability. R.C. 2901.21(A). Defendant argues on appeal that because the evidence demonstrates that he did not apply his brakes, slow down, or otherwise attempt to avoid the stopped vehicles ahead of him, the only reasonable conclusion is that defendant did not perceive the stopped vehicles because he suffered an epileptic seizure, much like one he had in October 2006 in the presence of Simon Sweet. Defendant argues that the testimony of the state's expert, Dr. Moore, describing a postictal state of confusion and agitation following a seizure, is consistent with the

testimony of the state's eyewitness, Julia Skrlac, describing defendant's behavior in the moments after the crash while defendant was trapped in his vehicle.

{¶ 13} The evidence presented at trial demonstrates that defendant suffers from epilepsy and had been prescribed medication by his doctor for that seizure disorder. Defendant had a valid driver's license at the time of the crash, but his license was subject to a medical restriction that required defendant to submit a form to the Bureau of Motor Vehicles every year, signed by his physician and stating that his medical condition was under control. Defendant's doctor had the authority to revoke/cancel defendant's driving privileges for medical reasons. Defendant experienced a seizure in October 2006, which he did not report to his doctor.

{¶ 14} Dr. James Moore, the state's neurology expert, testified at trial regarding epilepsy, various types of seizures, and the postictal symptoms a person would experience after coming out of a seizure. Dr. Moore opined that defendant did not have a seizure prior to the crash because a person experiencing a seizure would not be able to navigate the stretch of roadway that defendant drove, responding to the curves and passing other vehicles at a high rate of speed, as defendant did. Dr. Moore further testified that defendant's behavior immediately following the crash, in asking whether he caused the accident, is inconsistent with a postictal state because it demonstrates insight and defendant's grasp of the situation and his environment.

{¶ 15} Candy Rinehart, a nurse who assists epileptic patients, stopped at the crash scene to assist. Rinehart testified that defendant did not exhibit any postictal behaviors. Rather, defendant's conduct demonstrated that he was scared and in shock. Defendant's conduct in using his cell phone and talking clearly immediately after the crash was also inconsistent with postictal behavior. Paramedics who treated defendant at the scene observed no signs that defendant had suffered a seizure and no postictal behavior.

{¶ 16} Construed in a light most favorable to the state, this evidence is clearly sufficient to permit a rational trier of facts to find that defendant did not have a seizure just prior to the crash. Moreover, defendant's conduct in driving at an extremely high rate of speed on a well-traveled and curving road during the evening rush hour, and approaching a busy intersection full of stopped vehicles at 96 miles per hour, which greatly increased both the likelihood of a crash and the severity of injuries that would likely result, unquestionably is sufficient to demonstrate criminal recklessness.

{¶ 17} Recognizing that the charged offenses require proof that defendant caused the deaths and serious physical harm recklessly, not necessarily that he operated his vehicle recklessly, the state argues that a finding that defendant

suffered some type of seizure just prior to the crash does not preclude a finding that defendant acted recklessly.

{¶ 18} Evidence presented by the state demonstrates that defendant failed to report to his doctor a seizure he had suffered in October 2006, which was witnessed by Simon Sweet, and that had he reported that incident, defendant's doctor would have required him to stop driving for six months and would not have signed a medical release necessary for the driver's license that defendant was issued. Defendant was aware that his driver's license required yearly medical approval by his doctor. In other words, had defendant reported his October 2006 seizure to his doctor, he would not have been privileged to operate a motor vehicle on March 8, 2007, when this crash occurred. Furthermore, tests performed on blood samples taken from defendant after the crash revealed that certain medications his doctor had prescribed to control his seizure disorder, Keppra and Depakote, were not in defendant's system. Failure to take his prescribed medications increased the risk that defendant would have a seizure.

{¶ 19} Defendant argues that his failure to report his October 2006 seizure to his doctor does not constitute recklessness because he was not then aware that he was going to have a seizure, the timing of seizures not being predictable, and therefore he did not perversely disregard a known risk. That risk, however, is precisely why doctors are authorized to revoke the driving privileges of epileptics who have recently had a seizure, because until a sufficient period of "seizure free" time has passed, the person poses a risk to others using the roadways. The seizure-free time period allows for adjustments in medication and an assessment of the risk of a future seizure. The evidence the state offered was sufficient to support a finding that, being aware of that fact, defendant perversely disregarded a known risk when he operated his vehicle after having failed to report his prior seizure to his doctor and/or take his prescribed medication.

{¶ 20} Viewing the totality of this evidence in a light most favorable to the state, as we must, we conclude that a rational trier of facts could find all the essential elements of aggravated vehicular homicide and aggravated vehicular assault proven beyond a reasonable doubt, including that defendant acted reck-lessly. Defendant's convictions are supported by legally sufficient evidence.

{¶ 21} A weight-of-the-evidence argument challenges the believability of the evidence in relation to the reasonable-doubt standard and asks which of the competing inferences suggested by the evidence is more believable or persuasive. *State v. Hufnagel* (Sept. 6, 1996), Montgomery App. No. 15563, 1996 WL 501470. The proper test to apply to that inquiry is the one set forth in *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717:

{¶ 22} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines

whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord *Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541.

{¶ 23} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. In *State v. Lawson* (August 22, 1997), Montgomery App. No. 16288, 1997 WL 476684, we observed:

{¶ 24} "Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the fact-finder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the fact-finder, who has seen and heard the witness."

{¶ 25} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. *State v. Bradley* (Oct. 24, 1997), Champaign App. No. 97–CA–03, 1997 WL 691510.

{¶ 26} Contrary to defendant's argument, the eyewitness and medical testimony does not overwhelmingly establish that defendant had a seizure in the moments preceding the crash. The credibility of the witnesses and the weight to be given to their testimony were matters for the jury to decide, *DeHass,* 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, and the jurors did not lose their way simply because they chose not to believe the defendant's claim that he suffered an epileptic seizure, a conclusion that they had a right to reach.

{¶ 27} Even were we to credit defendant's claim that he suffered a seizure, that concession would not require a finding that his convictions are against the manifest weight of the evidence. Neither R.C. 2903.06(A)(2)(a) nor 2903.08(A)(2)(b) requires proof that an accused operated a motor vehicle recklessly. Rather, each requires proof that while operating a motor vehicle, the accused either caused the death of another or caused serious physical harm to another "recklessly." To the extent that the defendant caused both events as a result of a collision following a seizure he suffered that was a product of his failure to take his medication and/or to report his prior seizure to his doctor, a finding that defendant acted recklessly is not against the manifest weight of the evidence.

{¶ 28} Reviewing this record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the trier of facts lost its way in choosing to believe the state's witnesses, or that a manifest miscarriage of justice has

occurred. Defendant's convictions are not against the manifest weight of the evidence.

{¶ 29} Defendant's first assignment of error is overruled.

### SECOND ASSIGNMENT OF ERROR

{¶ 30} "Appellant was deprived of his right to due process of law under federal and state constitutions as a result of misconduct by the prosecution."

{¶ 31} Defendant argues that he was deprived of a fair trial due to prosecutorial misconduct.

{¶ 32} The test for prosecutorial misconduct is whether the prosecutor's remarks were improper, and if so, whether they prejudicially affected substantial rights of the accused. *State v. Bey* (1999), 85 Ohio St.3d 487, 493, 709 N.E.2d 484. The focus of that inquiry is on the fairness of the trial, not the culpability of the prosecutor. Id.

{¶ 33} Generally, prosecutors are entitled to considerable latitude in opening and closing arguments. *Maggio v. Cleveland* (1949), 151 Ohio St. 136, 38 O.O. 578, 84 N.E.2d 912; *State v. Ballew* (1996), 76 Ohio St.3d 244, 667 N.E.2d 369. A prosecutor may freely comment in closing argument on what the evidence has shown and what reasonable inferences the prosecutor believes may be drawn therefrom. *State v. Lott* (1990), 51 Ohio St.3d 160, 165, 555 N.E.2d 293; *State v. Root,* Montgomery App. No. 20366, 2005-Ohio-448, 2005 WL 281172. In determining whether the prosecutor's remarks were prejudicial, the state's argument must be viewed in its entirety. *Ballew.*

{¶ 34} Defendant argues that the prosecutor, despite knowing that the evidence supported the theory that the crash was caused by an epileptic seizure, introduced irrelevant and prejudicial evidence concerning defendant's angry demeanor and rage in the minutes preceding the crash. Specifically, the state introduced evidence of defendant's anger and rage while he was at a pawn shop and then at a Rally's drive-through restaurant. According to defendant, the state introduced this evidence to outrage the jurors and create hostility toward defendant.

{¶ 35} As we discussed in overruling the previous assignment of error, the evidence presented at trial did not necessarily prove that defendant had a seizure in the moments before the crash. Furthermore, the state was not precluded from arguing that defendant was motivated to act as he did by rage or anger. The evidence the state presented concerning defendant's behavior, and his angry demeanor and rage while at a pawn shop and at Rally's in the minutes before the crash occurred, was relevant and probative of the state's theory that defendant was operating his vehicle in a rage when he crashed into the stopped vehicles at

the intersection of Moorefield and Urbana roads, and that his driving was not the result of accident—that is, a seizure. Evid.R. 404(B). Defendant's angry mood and rage could explain his driving in a reckless manner at a grossly excessive speed, and such a state of mind could explain why defendant failed to recognize that the cars ahead of him were stopped. The state's contention that defendant acted out of a sense of rage may lack plausibility, because it assumes defendant also put his own life at risk. However, introduction of this evidence was not improper and was not misconduct on the part of the prosecutor.

{¶ 36} Defendant additionally complains of prosecutorial misconduct during closing argument. The prosecutor first noted that the jurors during the course of the trial had met the people affected by this crash. The prosecutor then stated: "If each and every one of you are honest with yourself, you have probably been [a]ffected because every time you're stopped at a traffic light from now on, your eyes are going to be looking in the rearview mirror. You're going to be thinking about this in the back of your mind."

{¶ 37} Defendant argues that the prosecutor's comment was a personal appeal to the jurors designed to frighten them into finding defendant guilty. Defendant failed to object to the prosecutor's remark, and the failure waives all but plain error. *State v. Braden*, 98 Ohio St.3d 354, 2003-Ohio-1325, 785 N.E.2d 439. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise. *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804.

{¶ 38} The prosecutor's remark was improper. It suggested that the jurors should convict defendant to prevent him from harming them, if he were acquitted. However, in light of the evidence presented, we cannot say that but for this remark, defendant would have been acquitted of these offenses. The remark therefore does not rise to the level of plain error.

{¶ 39} Defendant's second assignment of error is overruled.

### THIRD ASSIGNMENT OF ERROR

{¶ 40} "The trial court erred in its instructions to the jury regarding recklessness, to appellant's prejudice."

{¶ 41} Defendant argues that the trial court erred in instructing the jury on recklessness because it improperly elaborated on the Ohio Jury Instructions definition by including a comment on grossly excessive speed.

{¶ 42} In a criminal case, if requested special instructions to the jury are correct statements of law, pertinent, and timely presented, they must be included, at least in substance, in the general charge. *Cincinnati v. Epperson* (1969), 20 Ohio St.2d 59, 49 O.O.2d 342, 253 N.E.2d 785.

{¶ 43} The trial court instructed the jury on the culpable mental state of "recklessness" in accordance with the Ohio Jury Instructions definition, CR 417.17, which adopts the language used in R.C. 2901.22(C). Defendant had timely requested in writing, in accordance with Crim.R. 30, that the trial court instruct the jury that "proof of excessive speed alone is insufficient to constitute criminal recklessness." The trial court gave defendant's requested instruction, but, over defendant's objection, elaborated by explaining that grossly excessive speed is one factor that may be considered along with all of the other evidence in determining whether defendant acted recklessly. That additional language was requested orally by the state. The court's complete instruction on recklessness is as follows:

{¶ 44} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

{¶ 45} "Risk means a significant possibility, as contrasted with a remote possibility, that a certain result may occur or that certain circumstances may exist.

{¶ 46} "Excessive speed alone is insufficient to constitute criminal recklessness. Grossly excessive speed which presents a clear safety hazard to other users of the road is one of the factors to consider along with all other evidence regarding all of the circumstances of the event."

{¶ 47} Contrary to defendant's argument, the trial court's instruction does not imply or invite the jury to find that grossly excessive speed alone would support a finding of criminal recklessness, regardless of any evidence that defendant had a seizure. Rather, it is one factor to consider, along with all of the other evidence, in determining recklessness. That is a correct statement of the law, and more complete and fairly balanced than the instruction requested by defendant. This court has held that grossly excessive speed, when combined with other factors, will support a finding of recklessness. *State v. Moore*, Montgomery App. No. 22904, 2009-Ohio-3766, 2009 WL 2351729; *State v. Amerson* (Sept. 18, 1998), Montgomery App. No. 16529, 1998 WL 636983. We see no abuse of discretion on the part of the trial court in instructing the jury on recklessness as it did.

{¶ 48} Defendant's third assignment of error is overruled. The judgment of the trial court will be affirmed.

*Judgment affirmed.*

BROGAN and FAIN, JJ., concur.