[Cite as *State v. Copeland*, 2016-Ohio-1537.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102952**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CHRISTINA COPELAND

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-592086-A

**BEFORE:** Keough, J., Jones, A.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** April 14, 2016

**ATTORNEY FOR APPELLANT**

P. Andrew Baker
17877 St. Clair Avenue, Suite 150
Cleveland, Ohio 44110


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Thomas Anthony Miranda
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, Christina Copeland, appeals her convictions. Finding no merit to the appeal, we affirm.

{¶2} In December 2014, Copeland was charged with assaulting a peace officer and resisting arrest. The case was tried before a jury where the following evidence was presented.

{¶3} On December 17, 2014, at approximately 2:53 a.m., Brecksville Patrolman Jeff Golem ("Golem") was seated in his zone car along Interstate 77 North when he observed a vehicle drive past him at a high rate of speed. He activated the zone car's lights and siren and followed the vehicle. He observed the vehicle veering left and then riding the white fog line on the road; and according to the zone car's radar, the vehicle was traveling 98 mph in a 60 mph zone. The dashcam video was played before the jury, and they were able to see Golem pursuing the vehicle.

{¶4} When the vehicle finally stopped, Golem approached the driver of the vehicle, who was identified as Copeland. According to Golem, Copeland had glassy and bloodshot eyes, and there was an odor of alcohol emanating from inside the vehicle. Golem testified that Copeland denied speeding or violating any law. At that time, additional officers and another vehicle driven by Mark Smith ("Smith") arrived on scene.

{¶5} Smith testified that he was driving to work on I-77 when Copeland's car side-swiped his vehicle, but did not stop. He stated that he tried to follow the vehicle, but the rate of speed increased to an unsafe level. He noticed that the vehicle that hit him

was pulled over by the police; thus, he stopped to report the accident and damage. According to Smith, he heard a lot of yelling and saw Copeland jerking her arms. He testified that the officers were not being aggressive, but just trying to put Copeland in the back of the police car. He admitted that the officers had to force her into the car.

{¶6} Following a conversation with Smith, Golem noticed scrapes on Smith's driver's side door and damage to the mirror, and scrapes on Copeland's passenger side fender. Golem requested that Copeland exit her vehicle, but she did not comply. He testified that he had to repeat his request multiple times. The jury watched the zone car's dash cam video, which corroborated Golem's testimony.

{¶7} When Copeland finally exited her vehicle, Golem asked her to perform various field sobriety tests. Golem testified that she failed to comply with instructions on the Walk-and-Turn Test and the Horizontal Gaze Nystagmus Test, but complied with the One-Leg Stand Test. Again, the jury viewed this portion of the dashcam video showing Copeland performing these tests.

{¶8} Based on her performance of the field sobriety tests, Golem advised Copeland that she was under arrest for operating a motor vehicle while intoxicated ("OVI") and leaving the scene after an accident ("hit/skip"), and ordered her to place her hands behind her back. According to Golem, Copeland became hostile and aggressive and refused to comply with his requests to place her hands behind her back. Eventually she complied; however, her obstinance continued when she then failed to comply with repeated orders to sit in the back of the patrol car, claiming the handcuffs were too tight.

Golem assured her that the handcuffs were properly secured and gapped; however, Copeland continued yelling and struggling.

{¶9} Finally, Copeland was told that if she did not seat herself in the back of the patrol car, she would be placed in the back of the patrol car. When she still failed to comply, Golem grabbed her around the shoulder and tried to push her into the back seat of the patrol car. According to Golem and the video taken from inside the patrol car, Copeland became angry, hostile, and aggressive. She began kicking and would not comply. Golem testified that Sergeant Robert Johnson ("Johnson") was assisting him with Copeland from one side of the car while another officer was trying to pull her into the zone car from the other side. Copeland continued kicking, ultimately kicking Johnson in the face. Even after she was inside the zone car, Copeland continued to yell, scream, and kick the back window of the police cruiser. Copeland was transported to jail. The jury watched the dashcam video of these incidents.

{¶10} Paul Pountney, jailer for Brecksville Police Department, testified over objection. He told the jury about his interactions with Copeland at the jail, including that she was screaming and uncooperative, broke the jail phone, and had to be restrained. The jury also observed, over objection, a jailhouse video showing Copeland acting in this manner.

{¶11} Sergeant Johnson testified that he arrived on scene to assist Officer Golem in the traffic stop. He spoke with Smith and observed damage to both Smith's and Copeland's vehicles. Johnson testified that he interacted with Copeland when Golem

was asking her to exit her vehicle. According to Johnson, Golem asked Copeland at least 12 times to exit her vehicle. After Copeland was arrested and disobeyed Golem's orders to seat herself in the back of the police cruiser, Johnson assisted Golem. As Copeland was pushed in the backseat, she started kicking at them, striking Johnson on the left side of the face. He testified that he would have been kicked again by Copeland, but he moved. The jury saw pictures showing scratches, dirt, and redness to Johnson's face. According to Johnson, Copeland was already under arrest before she refused to sit inside the zone car.

{¶12} Copeland testified that she did not resist arrest and was trying to comply with the officer when he requested that she place her hands behind her back. However, she admitted that she did not immediately comply. Copeland also admitted that she did not sit in the zone car even though she was asked multiple times to do so, explaining they "didn't give [her] a chance" because she was asking the officers to loosen the handcuffs. Copeland further admitted that she was loud, acting obnoxiously, screaming, and yelling. However, she denied deliberately kicking Johnson and said any injuries he sustained were not caused intentionally; rather, it was an accident because she "wasn't thinking."

{¶13} The jury found her guilty of the offenses as charged. The trial court sentenced Copeland to 12 months in prison for assaulting a police officer and 90 days on the resisting arrest charge.

{¶14} Copeland now appeals, raising four assignments of error that will be addressed out of order.

**Opening Statement**

{¶15} In her second assignment of error, Copeland contends that she was deprived of a fair trial when the trial court interrupted her counsel's opening statement, in violation of R.C. 2315.01.

{¶16} During opening statement, defense counsel acknowledged that there is a natural tendency of jurors to put police officers in high regard. The trial judge interrupted counsel, reminding her that this was opening, not closing statement. Defense counsel continued her statement by indicating that "the magical cloak of innocence" is not always a reality. The prosecutor objected and a side-bar ensued. Following the discussion off the record, defense counsel told the jury that each judge and courtroom operate differently. After the judge again made a comment, defense counsel concluded her opening statement by keeping it "short and simple because that's what I've been instructed to do."

{¶17} The issue on appeal is whether these interruptions interfered in such a manner as to undermine defense counsel's opening statement to an extent that was prejudicial to the entire trial. We find they did not.

{¶18} Opening statements are not evidence. Opening statements are an outline of the case to be presented and are intended to give the jury a general idea of what each side expects the evidence to show. *State v. Wilson*, 1st Dist. Hamilton No. C-000670, 2002-Ohio-1854, citing *State v. Johnson*, 1st Dist. Hamilton No. C-950493, 1996 Ohio App. LEXIS 4163 (Sept. 25, 1996); R.C. 2945.10(B); R.C. 2315.01(A)(2). Opening

statements often serve to state the party's theory of the case. *State v. Inman*, 4th Dist. Ross No. 13CA3374, 2014-Ohio-786, ¶ 29, citing *State v. Warmus*, 197 Ohio App.3d 383, 2011-Ohio-5827, 967 N.E.2d 1223, ¶ 24 (8th Dist.).

{¶19} Counsel should be afforded latitude by the trial court in making an opening statement. *Columbus v. Hamilton*, 78 Ohio App.3d 653, 657, 605 N.E.2d 1004 (10th Dist.1992), citing *Maggio v. Cleveland*, 151 Ohio St. 136, 84 N.E.2d 912 (1949), paragraph two of the syllabus. However, opening statements should not include matters that attempt to influence or sway the jury by making statements that counsel knows will not be supported by competent or admissible evidence. *See Maggio* at 140-141.

{¶20} R.C. 2315.01(A)(2) provides that the "defendant shall state the defendant's defense, and briefly may state the defendant's evidence in support of it." In this case, the trial court's interruptions did not violate R.C. 2315.01(A)(2) because they did not interfere with Copeland's right to briefly state her defense and evidence in support of it. Counsel's statements were not focused on a defense or the evidence. In fact, counsel's opening statement went beyond an outline of the case to be presented and what the evidence would show. If the purpose of defense counsel's opening statement was "simply [an attempt] to ask the jurors to consider the evidence in the case without any bias or sympathy in favor of the officers," this attempt was previously accomplished during voir dire when defense counsel extensively questioned the jurors about their ability to be impartial when police officers are witnesses. (*See, e.g.*, tr. 166.)

**{¶21}** Furthermore, Copeland has failed to demonstrate on appeal how these interruptions to defense counsel's opening statement prejudiced the entire trial. Accordingly, Copeland's second assignment of error is overruled.

## Jury Instructions

**{¶22}** In her third assignment of error, Copeland contends that the trial court erred by failing to instruct the jury properly.

**{¶23}** Copeland first challenges the trial court's instruction that an officer's reasonable belief that she was speeding would justify a lawful arrest. After the state objected to the initial resisting-arrest instruction given to the jury because it did not include the offenses upon which Copeland could be arrested, the court, over a general objection, gave the jury the following instruction:

> I had told you that you must also decide whether the arrest was lawful. And I said an arrest was lawful if the offense for which the arrest was being made was one for which the defendant could be arrested, and the arresting officer had an authority to make the arrest at the time and place where the alleged resistance or interference took place and a reasonable police officer, under the facts and circumstances in evidence, would have believed that the elements of OVI, hit/skip[,] and speeding were being or had been committed by the defendant. The State need not prove that the defendant was in fact guilty of the offense, but only that the police officer had a reasonable belief of the defendant's guilt.

**{¶24}** Subject to certain exceptions, the offense of speeding is a minor misdemeanor for which a person cannot be arrested. R.C. 4511.21 and 2935.02. The state concedes on appeal that Copeland's speeding offense was a minor misdemeanor. Accordingly, the trial court erred in including the offense of speeding as an arrestable offense in the resisting-arrest jury instruction.

**{¶25}** However, the jury heard testimony at trial that Copeland was arrested for OVI and hit/skip, which, in this case, are both first-degree misdemeanors and thus, arrestable offenses. R.C. 4511.19 and 4549.02. Therefore, because those offenses were included in the instruction for which Copeland could have been arrested, we find that the trial court's inclusion of speeding was harmless error. *See* Crim.R. 52(A) (errors that do not affect a substantial right shall be disregarded).

**{¶26}** Copeland also contends that the trial court erred when it instructed the jury, over objection, that voluntary intoxication was not a defense to the crimes. Copeland asserts that the trial court abused its discretion in giving this instruction because she was not asserting this defense at trial. Accordingly, it appears that Copeland is not arguing that the trial court gave an erroneous instruction; rather, she is asserting that the trial court gave an unnecessary instruction.

**{¶27}** A "trial court has discretion to determine whether the evidence is sufficient to require a jury instruction on intoxication." *State v. Nields*, 93 Ohio St.3d 6, 22, 752 N.E.2d 859 (2001), citing *State v. Wolons*, 44 Ohio St.3d 64, 541 N.E.2d 443 (1989). Therefore, while Copeland may not have been asserting the defense, the trial court may have considered it necessary based on the evidence presented at trial.

**{¶28}** Furthermore, when reviewing a trial court's jury instructions, we may not judge a single instruction in isolation, but rather in the context of the overall charge. *State v. Madrigal*, 87 Ohio St.3d 378, 396, 721 N.E.2d 52 (2000). Thus, we must consider the jury instructions "as a whole" and then determine whether the jury charge

probably misled the jury in a manner materially affecting the complaining party's substantial rights. *See Becker v. Lake Cty. Mem. Hosp. W.*, 53 Ohio St.3d 202, 208, 560 N.E.2d 165 (1990).

{¶29}  In this case, after viewing the jury instructions as a whole, we find that the trial court's decision to instruct the jury on voluntary intoxication was harmless error. *See* Crim.R. 52(A).  We cannot say, nor has Copeland demonstrated, how she was prejudiced or how the jury would have been confused or misled by the inclusion of this instruction.  *See, e.g., State v. Carradine*, 8th Dist. Cuyahoga No. 101940, 2015-Ohio-3670 (trial court's inclusion of an erroneous extra instruction was not plain error when viewing the jury instructions as a whole).  Accordingly, Copeland's third assignment of error is overruled.

## Allied Offenses — Assault of a Police Officer and Resisting Arrest

{¶30} In her fourth assignment of error, Copeland contends that the offenses of resisting arrest and assault on a police officer were allied offenses and should have merged for sentencing.

{¶31} Because Copeland did not raise the issue of allied offenses in the trial court, we review for plain error:

> An accused's failure to raise the issue of allied offense of similar import in
> 
> the trial court forfeits all but plain error, and a forfeited error is not
> 
> reversible error unless it affected the outcome of the proceeding and
> 
> reversal is necessary to correct a manifest miscarriage of justice.

Accordingly, an accused has the burden to demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus; and, absent that showing, the accused cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error.

*State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3.

{¶32} R.C. 2941.25 provides that:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶33} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Supreme Court of Ohio clarified how courts are to determine whether offenses are allied. The Supreme Court noted that the allied-offenses analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. *Id*. at ¶ 26. Nevertheless, conduct is but one factor to consider when determining whether offenses are allied. *Id*. at ¶ 21. The court explained:

As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must

ask three questions when defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Id*. at ¶ 31.

{¶34} With respect to import, the Supreme Court explained that offenses are of dissimilar import "if they are not alike in their significance and their resulting harm." *Id*. at ¶ 21. Thus, "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id*. at ¶ 26.

{¶35} In support of Copeland's argument that the offenses merge, she directs this court to *State v. Johnson*, 7th Dist. Mahoning No. 12 MA 137, 2014-Ohio-4253. However, the *Johnson* facts are clearly distinguishable because in *Johnson*, the arresting officer and the assaulted officer were the same individual and the offenses were the result of conduct committed by a single act with a single state of mind. *Id*. at ¶ 116, 120.

{¶36} In this case, Copeland committed the offense of resisting arrest when she failed to comply with Officer Golem's repeated orders and requests to place her hands behind her back so that he could place her in handcuffs and then again when she

repeatedly failed to cooperate and seat herself in the back of the police cruiser. Copeland then committed the separate offense of assault on a police officer when she kicked Sergeant Johnson in the face. In addition to the break in time between the two offenses, the arresting officer and assaulted officer were different individuals; thus different victims. Accordingly, the offenses of resisting arrest and assault are not allied offenses subject to merger for sentencing.

{¶37} Accordingly, Copeland's fourth assignment of error is overruled.

### Effective Assistance of Counsel

{¶38} In her first assignment of error, Copeland contends that "the trial court erred by failing to reverse her conviction for failure to receive effective assistance of counsel." We first note that Copeland did not request a new trial with the trial court. Therefore, the trial court was not in a position to reverse Copeland's convictions. However, a review of the arguments made under this assignment of error are merely an appellate challenge to the effective assistance of trial counsel.

{¶39} To establish ineffective assistance of counsel, a defendant must demonstrate (1) that counsel's performance fell below an objective standard of reasonable representation and (2) that he was prejudiced by that performance. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674, (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶40} The failure to prove either prong of the *Strickland* two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000), citing *Strickland* at 697. "In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. * * * If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice * * * that course should be followed." *Strickland* at *id*.

{¶41} In this case, Copeland contends her counsel was ineffective for failing to object to the testimony and exhibits introduced at trial depicting her conduct at the jail following her arrest. She contends that this evidence was irrelevant, prejudicial, and did not give rise to any additional charges for which she was on trial. Accordingly, she contends counsel allowed improper Evid.R. 404(B) evidence to be submitted to the jury because the case came down to whether the jury believed the officers that she intentionally kicked Johnson or whether the jury believed that the injury to Johnson was accidental.

{¶42} We need not analyze any alleged counsel deficiencies because Copeland cannot demonstrate that she was prejudiced by any of counsel's errors such that the outcome of proceeding would have been different.

**{¶43}** Excluding the jail video and the challenged testimony, the jury had sufficient evidence before it to support Copeland's convictions. The jury was able to view Copeland's conduct during the traffic stop, including her repeated refusals to cooperate with the police. The jury was able to hear the officers' repeated requests for Copeland to exit her vehicle, perform the field sobriety tests, place her hands behind her back, and seat herself in the police cruiser. The jury was able to further observe and listen to the struggle that ensued once the officers were forced to assist Copeland in the police cruiser. Finally, the jury heard Copeland screaming, yelling obscenities and threats, and saw her kicking once she was inside the police cruiser. Furthermore, Copeland admitted that she was acting loud and obnoxious while she was screaming and yelling. She also admitted to kicking at the windows once inside the cruiser.

**{¶44}** The jury is in the best position to view credibility. *See, e.g., State v. Gibson*, 8th Dist. Cuyahoga No. 98725, 2013-Ohio-4372, ¶ 57. Therefore, the competing interpretations of Copeland's actions — whether Copeland intentionally or accidentally kicked Sergeant Johnson during the melee — were before the jury and they could make their own determination based on their own observations of Copeland's conduct.

**{¶45}** Accordingly, it cannot be said that a reasonable probability exists that the result of the proceedings would have been different but for any alleged errors by defense counsel. The second part of the *Strickland* test has not been satisfied. Copeland's first assignment of error is overruled.

**{¶46}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

LARRY A. JONES, SR., A.J., and
ANITA LASTER MAYS, J., CONCUR